Mr. Burch. Good morning, and may it please the Court. Since 1940, the Fair Labor Standards Act has limited all of the white-collar exemptions to employees paid on a salary basis. In the more than 80 years since then, that's been the deal. Exempt employees may not get overtime, but what they do get is paid for the full week without regard to the number of days or hours that they work. That is, they get paid what everybody recognizes is a true salary. Schlumberger's compensation model turns the notion of a true salary on its head. Under Schlumberger's scheme, almost everything appellants were paid for their normal work weeks was directly contingent on the number of days that they worked. When 80% or more of your pay depends directly on the number of days that you work in a week, you are paid with regard to the days that you work, and not without regard to the days that you work, as the law requires. Your earnings are computed on a daily basis, not on a weekly or less frequent basis. Just earlier this year, the Supreme Court warned us to be wary of compensation schemes like Schlumberger's, schemes that include a token salary but that tie the vast majority of the employee's weekly pay to their, that is, their true weekly pay, their true weekly salary, directly to the days that they work. Helix reminded us that employers like Schlumberger will guarantee a minimum amount, quote, in a heartbeat if doing so eliminates the need to pay overtime. But that is just a, but Schlumberger's plan is just to say that it neither wishes to pay the employees a true salary, nor does it wish to pay them overtime. And the whole point of the salary basis test is to take that option off the table. And I'm quoting here, even though that may well increase costs. Because the salary basis test is the same for all workers, this court would rightly be concerned about what the Supreme Court called the disturbing consequences of adopting Schlumberger's position. It would deprive workers, even at the heartland of the FLSA, folks who make far less than $100,000 a year annually of overtime pay. The Supreme Court specifically identified nurses, workers who are likely to meet the general exemptions duties requirements, they'll pass that part of the test, for example, for exemption, as workers who would lose their right to overtime. The government told the Supreme Court and the Supreme Court noted that nurses are not alone. They're just one of many types of workers who will lose the right to overtime pay if Schlumberger prevails. The consequence, unlike the ones I suspect my friend may raise, are difficult, quote, if not impossible to reconcile with the FLSA's design. And it's not like the issue of forward-going compliance didn't come up at the Supreme Court, or didn't even come up at the en banc of the Fifth Circuit. It did, and the Supreme Court specifically identified how employers could comply with the FLSA. It said Helix could convert Mr. Hewitt's compensation to a straight weekly salary for the time he spends on the rig. Alternately, it could, and again I'm quoting, add to Mr. Hewitt's day rate a weekly guarantee that satisfies 604B's conditions. This court, in the en banc opinion, was even more specific, said Helix could easily have complied with 604B, for example, by offering a minimum weekly guarantee of $4,000, given Hewitt's day rate of $963 a day. As the Department of Labor explained, and the Fifth Circuit noted in the en banc opinion, without the application of the reasonable relationship test, employees could routinely receive weekly pay of $1,500 or more, yet be guaranteed only the minimum required of $455. This would effectively allow employers to dock employees for partial day absences. Schlumberger, of course, gives the Supreme Court and this court the back of his hand. Schlumberger says Helix wouldn't need to guarantee $4,000 a week or anything close to it. It could just call $700 of his weekly compensation a salary, and then Schlumberger says nothing else matters. Do we think that the Fifth Circuit, the Department of Labor, and the Supreme Court missed that option? Do we think that no one would have raised it if it was available? No way. Even Justices Kavanaugh and Alito, who dissented in Helix, don't buy Schlumberger's interpretation. According to Judge Kavanaugh, under 604, executives are not entitled to overtime pay if they are guaranteed at least $455 a week that they work, and at least two-thirds of their compensation come in the form of a weekly guarantee. Judge Jones made a similar point in her dissent in the Helix en banc. The dispute there was never about what the reasonable relationship required, what test required, or how it applied if there was a weekly guarantee. The dispute was whether or not it applied to so-called highly compensated employees. And after a vigorous debate and a split at both the en banc Fifth Circuit and at the Supreme Court, we now know the answer is yes, it does. The test is the same for the highly compensated employees as it is for those less highly compensated. Therefore, at least two-thirds of appellants' compensation had to come in the form of a weekly guarantee. It's undisputed that it did not. Schlumberger's minimum guarantee plus extra plan never even came close to the tolerance as permitted by 541-604. All that matters here because the lower court did not say, even if these workers are similarly situated with respect to the salary basis issue, which would be dispositive of Schlumberger's exemption defense, I nonetheless find they are similarly situated. Instead, the lower court refused to consider the salary basis aspect at all because it was applying the wrong standard. The lower court believed that if there is a minimum guarantee meeting the salary level requirements and it's paid on a salary basis, that's the end of the inquiry. That cannot be right. I've given you, as a bench exhibits copies of the regulations that were in place during most of the time period here, but they're functionally the same even today. And in 541-604-B, it is crystal clear that the first requirement of the reasonable relationship test is that there be a guaranteed amount that is at least the salary level, is paid on a salary basis. And so if a compensation plan where that had been met means nothing else matters, we never get, never ever get to the second step of the reasonable relationship test because that is what is required to meet step one. And reading a set of regulations or any law or any contract in that matter would be absurd. You don't say, hey, here's this test that applies if you have a salary and you have additional pay. But by the way, if you have a salary, you never have to worry about the additional pay. That, frankly, just cannot be right. Can you spend some time talking about the jurisdictional issues? I'm sorry, Your Honor? Could you please spend some time talking about the jurisdictional issues? Yes. My friend, of course, wants you to ignore all this and dismiss the case for a lack of jurisdiction. He's wrong about that for several reasons. First, we are appealing from a judgment with respect to these plaintiffs. Did it dispose of all parties and all claims? In entering that judgment, the judge expressly distinguished, this is my thing, on its face, it is final with respect to the appellants here, the opt-in plaintiffs. But isn't there still left issues to be resolved by the district court in this case? So how can it be a final judgment if there are still issues that need to be resolved in the case? Because he referred to it as a judgment, he dismissed these people specifically without prejudice, and it's clear from his order that he intended to have nothing further to do with them. Under this court's precedent, that's enough. When you say, what's your best case, it's directly on point. You say, our precedent, what's that case that's on all fours here? It's cited in the blue brief, and when I come back up for you, I will give you the page, Judge Richmond. I would like to also mention, however, that that's not the only reason why it should be considered a final judgment. We also know from subsequent ruling from this court, as noted in our reply brief, subsequent rulings from this court have indicated, I'm now done with those folks. Those folks are now on appeal. And look to what happens. I'm sorry. Oh, I'm sorry. So are you arguing that this is a partial final judgment under Rule 54? It is. It is a judgment with respect to these plaintiffs. Elaborate on that. When you say, I am kicking you out of this case, or I am removing you from this case, get the hints, basically. That has real-world impact for those folks. They have to do something. He did not toll, I'm going to cover this in a second, but he did not toll the statute of limitations in his order. By not tolling the statute of limitations, he leaves them open to at least the argument that is now a dismissal with prejudice, because the statute of limitations is not tolled if you are dismissed without prejudice, generally. Are they, in fact, able to resume their claims in another case? They are. We know that they are in this particular case now, because subsequent to that, we reached an agreement for tolling with Schlumberger. That doesn't change the nature of his judgment. Okay. Right. The nature of his judgment is determined by that, not by subsequent events by third parties. Okay. Or at least that's my take on it. I'd also like to say that it seems to me that all this is confirmed by what type of rights we're talking about with respect to these appellants. The FLSA authorizes a named plaintiff to bring a collective action on behalf of himself and others similarly situated. But it vests the right to join, the right to intervene in that case in the third party plaintiffs, in folks that have not yet joined. For those folks, it is their right that is being denied. It's their right to join, and therefore terminating their right to join the collective action is much more akin to an order denying intervention, which is appealable regardless of whether it is considered an intervention as of right, which I think it would be given the language of the statute, or whether it's considered permissive intervention, at least under what's called, as I know Your Honor knows, provisional jurisdiction. So either way, it should be appealable on that basis as well. Well, there was a certification, and this is a decertification, right? There is. But that's not like denying intervention outright. It isn't. This is my take on it. It isn't vis-a-vis the person bringing that motion, right? Because if you are the named plaintiff, you are the one bringing the motion for certification, decertification, right? A motion for decertification is cutting off my clients, the appellants here. It's cutting off their right to join an FLSA collective action, which is their right akin to a right to intervene. And so regardless of what you call it, if the effect is you're being denied your right to intervene, that's an appealable order. With the little time I have remaining, I would like to say that what I talked about with the salary basis has played out here at the Fifth Circuit. We know how that works. We had a case called Gentry v. Hamilton Rikers where the employer guaranteed a quote salary of eight hours a week, and then after eight hours in a week, you got paid by the hour, right? And the court, Judge Edison, Judge Brown, the Fifth Circuit panel, all looked at that. And it's easy to tell with that, oh, well, that's not even close to a weekly pay. That's got nothing to do with a week. That's just eight hours back. And the additional pay that you're talking about is really just your normal weekly pay. But here that situation is not any different. The situation here is we're just not calling it for eight hours. We're saying this is a tiny sliver of your overall weekly pay, and that tiny sliver, we're calling it a weekly salary, even though it bears no relation to what you actually get paid in a week, which is contrary to what the Supreme Court held in the case. If you don't have any further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. My name is Robert Lombardi, Counsel for Schlumberger Technology Corporation, or SDC. And there are four points I would like to make, but before I get to them, I would like to address some of the statements made by Appellant's Counsel in their briefs and in the argument. And first, I say I'm happy to hear that jurisdiction first. You've tried on behalf of Schlumberger to get this dismissed before getting here. And each time the motion was made to dismiss, the panels carried it with the case, tried again, carried it with the case. So here we are. So it wasn't as clear-cut as apparently you thought to avoid it. So here it is. So obviously, we don't have jurisdiction. We don't get to the others. So why don't you just lead off and tell us of your certainty? All right, Your Honor. So to begin with addressing Plaintiff's jurisdiction argument, Appellants, within making their arguments, Appellants conflate finality and appealability. Plaintiff's Counsel concedes that this falls under 54B. And as such, in order to process an interlocutory appeal, they must meet all the requirements, which includes that the judge specifically indicate that this may be brought as an interlocutory appeal. Furthermore, he has to file a motion, or rather a petition, to grant an interlocutory appeal, which was never done. All they did was treat this as a final judgment. And during most of their briefing, they treated it as a final judgment of all issues. It's only now they're conceding it's interlocutory. In their argument, they cite Federal Rule of Appellant Procedure 3 as support for they have met all the requirements. But that rule covers final judgments of the district court, appeals by right. This is not. This is covered by Rule 5, governing interlocutory appeals. And they have not met all the requirements of Rule 5. Counsel, what about the argument from your colleague that this judgment is final with respect to these parties, and therefore it is appealable? Your Honor. I mean, the up, out. Your Honor, for one thing, it's my understanding that the Western District of Louisiana entitles all decertification orders judgments. And Wright and Miller is clear that just because something is entitled a judgment does not make it a judgment. This is an order. The time for filing an appeal as to the case has not run at this time. That runs 30 days after the final appeal, I mean, after a final judgment is entered. So nothing prevents these individuals from raising these issues in an appeal after final judgment. And as far as losing the right, the parties agree to a stay until for 30 days after the entry of a final judgment. So there's no risk to the appellants as far as this matter goes regarding that. Did anybody ask the district court to put something written in the record that this ends the action and there's no just cause reason for delay? No, Your Honor. STC did move the court for an entry of final judgment covering all the issues in the case, but appellants opposed that. And since then, it's just been in limbo. The court recently issued an order saying it would not hold a status conference as the matter was on appeal. But that's far different from saying that the court actually has authorized. If the court wanted to authorize this as an interlocutory appeal, it had the ability to go back and alter the original judgment. But just by making a statement that I'm not going to touch this while this is on appeal is not that same thing. And Your Honor, when it comes to the issues of jurisdiction, even if this appeal was valid, we're going to have jurisdiction over the reasonable relationship argument. That ruling was made in summary judgment. The only issue that came up about reasonable relationship in terms of the decertification order is that the magistrate judge in issuing an R&R noted, and in fact, I'll forgo quoting it. But she said basically that this issue was decided on summary judgment. And that is the extent to which she addressed it. A court does not have to reconsider summary judgment decisions in considering another order or considering another motion. And therefore, the court clearly did not abuse its discretion in terms of saying that it's a matter decided. I don't have to address it again. If we are actually appealing only the decertification order, the repeal fails. As there is no abuse of discretion or refusing to reconsider an order. It is only on a final appeal where summary judgment is addressed can they raise the reasonable relationship issue. And your honor. Just in general, in talking about the arguments plaintiffs are making, every single case they depend upon is a case that was either a day rate or hourly rate. They were not ones in which plaintiffs were paid a salary. All the Boudreaux plaintiffs were paid a biweekly salary in excess of the minimum. As such, they're covered by different regulation and it's addressed under a different standard. The Supreme Court recognized that in the Helix decision in terms of saying that there's a path under 602A where the person is paid a salary. Or the alternate path is under 604B for those people who are compensated on an hourly, daily, or shift basis. They are not overlapping. You either are in one or the other. And in this particular case, we're dealing with a salary issue. And that seriously undermines all of their arguments. Appellants state over and over again that STC had a compensation scheme that deprived workers of overtime. But that's a specious argument. Appellants are not contesting that they meet the duties test for the exemption. And the basis of the exemption under the statute is the duties. Plaintiffs are just trying to turn a technical argument contrary to the regulations about the specific compensation plan and try to turn that into a one-time payoff for those in this seat. And not receiving overtime does not mean that appellants were shortchanged in any way. STC paid the directional drillers the market value for their services based on compensation surveys. If STC had to change to hourly pay, they would have to either lower their pay rate or remove the bonuses in order to account for those costs. STC designed its bonus plan to conform with the FLSA and industry conditions. Employees often work two weeks straight. Then they're off for two weeks. Or when there's a downturn, they may be off for four or six weeks or more. STC absorbs that cost and continues to pay them their base salary throughout that period. And then it turns around, and when they are working, it shares the revenue. When they bill the customer, they receive a bonus. That is not a day rate as the FLSA contemplates a day rate. Under the FLSA, a day rate is your whole pay for a day's work. If employees aren't billing, they don't get the bonus. If they're billing, they're sharing the revenue, and it's a revenue-sharing plan, not a day rate. And as appellants admit, these people are highly paid. It's making a false policy argument to say somehow these people are going to be harmed or disenfranchised because unlike a day rate where you just promised one day and you don't get it if you work the rest of the week, they are getting their base salary the whole time. And overall, they are very highly paid, and they're paid in a way that works for the industry. Your Honor, as I said, the decertification order, it clearly does not cover the issue that plaintiffs are raising here. And appellants repeatedly mentioned gentry being Hamilton Riker, were being guaranteed their hourly rate for eight hours, and then received the same hourly rate for all time over eight hours. The magistrate judge did say the reasonable relationship test applied there, but those are not the facts here. And plaintiffs didn't mention in argument a bearer versus FMC Technologies. That's directly on point with this case. That is where this court said that because they're paid the base salary, the reasonable relationship test does not apply. Maybe they were paid a salary that complied with 602. And in a bearer, plaintiffs specifically argued that, well, I go out to a rig, I get rigged pay 100 days a year. That converts my pay to a day rate. And the court said no. The court said the reasonable relationship doesn't apply because this falls under 602A and not under 604B. Therefore, that 604B does not apply. And if this court were to go the other way, if the court chose to reach the merits, that would conflict with the court's unpublished decision in this case. It would also directly conflict with a decision that came out about three months ago in the Tenth Circuit, in which the Tenth Circuit analyzed this same pay plan, Wilson versus Lumberjee Technology Corporation. The individual was an NWD. That was half the class when this case was originally filed. And the court said these people are paid a genuine salary under 602A. Therefore, the reasonable relationship does not apply. So if the court touched the merits and went the other way, it would be a circuit split on the same pay plan to the same company, which would not make a lot of sense. STC's position is also consistent with the Second Circuit's prior holding in Anani. In Anani, the individuals were consultants. They were guaranteed $1,000 a week, no matter what. They were also able to earn $50 for consulting engagement. If they consulted more times than the $1,000, they got the higher amount, and they usually did. But they were guaranteed the $1,000 as a base salary per week. The Second Circuit said the reasonable relationship test does not apply in that case. And again, the facts are clearly analogous with this. Your Honor, in our brief, we also pointed out that Anne mentioned here that the reasonable relationship argument is clearly outside the scope of their appeal. The only issue on appeal is the interlocutory order. Therefore, that's the only thing that should be considered by this court. The issue of the reasonable relationship test was decided in the district court on summary judgment. The appellant should be required to wait until the final judgment is entered before raising that issue. And in the same way, appellants have a problem in that none of their briefing goes to any of the issues in the decertification order. The magistrate judge filed an RRR recommending decertification based on three points. First one is that the name defendant had been dismissed. Therefore, there was no one to represent the opt-ins. Second is that the evidence in the summary judgments, based on uncontested evidence as to a number of plaintiffs, showed that, at best for plaintiffs, they were dissimilar and they could not be tried. The magistrate judge reached the conclusion that, based on that, they could not, in a fair and orderly manner, without confusion to the jury, be tried in one trial. Therefore, she recommended dismissal. As I said, the only way that the magistrate judge addressed the reasonable relationship test is saying that that was decided on summary judgment. At the minimum, the issue of whether or not the RRR was proper is decided under abuse of discretion standard. Maybe I misunderstood you. You just said that the main defendant was dismissed. The main plaintiff, I'm sorry. The main plaintiff was dismissed and there's no one left? Your Honor, this case was originally filed with three main plaintiffs. Two settled out. The third was dismissed on the merits on summary judgment. There were no remaining main plaintiffs. So we had approximately 96 opt-ins with no main plaintiff to represent them. Under those conditions, the court considered the fact that, as there was no remaining main plaintiff, they should be dismissed, and the court relied on a Third Circuit case, Kempsey v. University of Pennsylvania, 729 Fed 3rd, 239, which went that same way. So what's left in the district court? The entry of a final judgment. Well, has it against you? Well, Your Honor, the issues are, on orders, the court dismissed the Rule 23 California class claim. On order, the court dismissed seven plaintiffs, six opt-ins, one main plaintiff on summary judgment on the merits. Additional 10 or 12 plaintiffs have been dismissed for failure to attend depositions, not raising claims, et cetera, under Rule 12. Again, is there any single claim or any single plaintiff left in front of the district court? Your Honor, if a judgment is entered, there won't be. It seems like once the final—once an order was entered that, leaving no further claims and no further parties, it became final at that point. I guess— Your Honor— The entry of final judgment piece of paper— Your Honor, the reason why a final judgment is necessary is there is a great deal of case law saying that a judgment has to be entered as a separate order, and there was no distinguishment made as to whether any of these people were dismissed with or without prejudice. Of course, we would not want to see a final judgment saying the summary judgments on the merits and dismissal of the Rule 23 claim were on the merits with prejudice. And I don't think plaintiffs want to say that this thing is over because all they've appealed at this point is the decertification, and I'm sure they want to do a final appeal. How is this ever going to get off the dime? What's that? How is this ever going to get off the dime? Your Honor, we've been trying to move for a final judgment in this case, but plaintiffs have been opposing it. And at this particular point, the district court has said that as long as this is remaining on appeal, it's out of my hands, essentially. So once this appeal is dismissed, we will again ask the court to enter a final judgment. Is the reason why, in your understanding, the plaintiff is not moving for a final judgment is because they're concerned about it being with prejudice, or do you know? Your Honor, there's two points regarding that. There is some disagreement to the parties as to the extent to which certain orders should be with prejudice or without prejudice. That would seem to be an easy thing for the court to resolve. But as far as just plain not entering a judgment, from a plaintiff's perspective, I would say that every day that there is no adverse judgment as to reasonable relationship is a good day in terms of making the argument in other cases. So there's a little incentive from that perspective. When you moved for entry of a final judgment, what was your articulation for that occurring? I know you said plaintiffs objected to it, I think. Yes, Your Honor. How did you articulate in the motion that there should be entry? Your Honor, we moved and we said basically there's been a number of orders. The judgment that has been entered only addresses the issue of decertification. We're asking the court to go ahead and detail in a final judgment all the other orders removing plaintiffs or pending dismissal of plaintiffs and assign them either with or without prejudice and we outline the specific orders we wish to see addressed and our view of how that should be characterized. And claims filed in opposition and in it that they raised an issue regarding whether or not some of them should be with or without prejudice and that's as far as that motion went. So the district court denied the motion? It hasn't ruled on it yet. Oh, it hasn't ruled on it? Yes, Your Honor. And claims requested a status conference to talk about rebriefing reasonable relationship and only recently the court issued an order saying we're not going to give a status conference while this is on appeal. And that was then the energy behind your motions at our motion stage to dismiss because of all that. Yes, Your Honor. Your Honor, I see I'm out of time and I'm happy to answer any additional questions. We're here if you have other questions. No, I'm just trying to understand the process because one of the reasons in the motion stage, you know, you're somewhat reluctant to just dismiss somebody's case without more and so two times around that was denied. So it was carried with the case and then had the unusual import of being countered for argument. So it wasn't abundantly clear what happened, but I . . . Your Honor, the only thing I see this interlocking to reappeal as having done is confuse things. Okay. Thank you, Your Honor. Judge Richman, as I told you I would, I did look at the blue brief. It's on the ECF stamped page 25. The three cases I would recommend to you are Kelly v. Lee's old-fashioned umbrella investment and I'm probably going to butcher this name, but Uekert, U-E-K-E-R-T, they're all on page 25. What's the holding takeaway from those cases that you're relying on to get you to where you want to be? That there's no magic words that are required, although here, you know, we take Judge Summerhase and his word that he knew what he was doing when he entered a judgment. It's the only time in this entire case, which is coming up on a decade old, where he entered a judgment. We take him at his word that he meant to do something different when he did something different from what he's done ever in this case. Have you opposed entry of final judgment? Yes. Why? Well, we're still contesting. What I'm saying to you here today, I intend to say to Judge Summerhase at the district court level with respect to the plaintiffs that are remaining in that case, he's all deference to him. He's still wrong about what he requires. Don't you see the irony of . . . the other side says, we have no jurisdiction for us to be hearing this because it's not final. You're arguing we have jurisdiction to decide these merits issues, yet you oppose the entry of final judgment below and acknowledge that is the case. I mean, it can't be one thing or another. I see it as there are two different groups of folks at this point. This is how I see it. There are the folks that are still before the district court. There are the folks that the district court kicked out of that case. The folks that got kicked out of the district court case, just like the people who have their right to intervene, denied, can then appeal regardless of what is going on. Cite me a case that says that. That says what, Your Honor? When you dismiss a plaintiff without prejudice and no certification under anything, that that's a final judgment. Just tell me what that case says. I would, again, refer you to the cases that we cite in the blue brief. But those cases don't . . . From my ears, that's not responsive to what the chief is asking you, because it sounds like what the cases you're citing just tell us the general propositions, which we know to be true. Labels, it doesn't matter what it's labeled, blah, blah, blah. What's the holding in any case that fits on all fours the contours of this seemingly hybrid situation? Are you asking us to make law? I'm not asking you to make law. I'm asking you to follow the law as I see it. This is the best analogy that I can come up with. The answer is you don't have a case on all fours. I'm not aware of any case in which a judge said, I'm kicking you out of this FLSA collective action on a decertification. You must now leave my case and go file a case somewhere else. If they're still before the district court, then how can they split their claim and go file . . . If we should determine, and not presaging it, but if we were to determine . . . Yes. . . . that we don't have jurisdiction . . . That's it. . . . we dismiss the appeal . . . You got it. . . . where are you in terms of back before Judge Summerhays? We go back to Judge Summerhays and say, we'd still like you to re-evaluate this in light of Helix. Would you ask for certification under Rule 54B? When I got the judgment, given that that's the only judgment he's issued in this case, it deals with a specific group of people, and it clearly intends for the court to be done with it. Based on my understanding of what it takes to create a judgment, that was enough for me. Well, if we say no . . . Right. . . . would you go back down and ask for certification? Yes. I could. Yes. Which, to me, doesn't seem particularly efficient. You could have asked for Rule 54B certification before you brought this appeal. Again, Judge, and I appreciate that you may feel differently, but I took Judge Summerhays at his word when he said . . . Well, we're not talking about Judge Summerhays' word. We're talking about the rules here. Right. I agree. The case law, and you can . . . I agree. I'm pretty sure we've got a case that says, just because you dismiss all claims against a party without prejudice, that that party can immediately appeal. I think we've got cases that say, no, not unless the district  just cause for delay. I thought we had a case that says that. Am I wrong? We also have cases that say that. Am I wrong that what I just said, or do we have cases that say that? I'm not quibbling with you, but I'm trying to explain. My view on that is that what it takes to meet the standard that you have articulated does not depend on magic words. It doesn't depend on using heretofore or saying . . . Well, show me the case that says, what happened here is enough. I think it's the cases that we cite at page twenty-five of our . . . Of your reply brief or your blue brief? Of the blue brief. Okay. I was looking . . . They're probably in the gray brief, too, but they're in the blue brief. I just looked at your blue brief, and I didn't see any cases. I didn't see a swinging case that addresses jurisdiction. I don't think. Page twenty-five means stamped at the top. It's probably . . . Ah, okay. I'm sorry. I was looking at the bottom. Yeah. That's always the concern, right? You look at the number or the stamped page. Okay. I'll look at those. I would just like to . . . I recognize my time is expired, but I can just give my final thought. The folks at Slumber J love to say that they have a hybrid compensation plan and that that takes them out of 541-604. It's a hybrid plan with the worst of both worlds. It offers no protection from partial day deductions. It doesn't offer a true salary, and it offers no overtime. The folks at Slumber J admit that this is the same pay plan that applies to everybody. It would indisputably be a common plan. We take your point. Okay. And just in case somebody . . . Your time is expired. Yes. Okay. Fair enough. Thank you. It's the second time. I'm sorry. It's all right.